UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.                        **MEMORANDUM OF LAW & ORDER**
                             Crim. No. 15-MJ-312(2)

Adnan Abdihamid Farah,

    Defendant.
_____

    John Docherty and Andrew Winter, Assistant United States Attorneys, Counsel for Plaintiff.

    Paul Engh, Counsel for Defendant.
_____

## I.  Introduction

This matter is before the Court on the Defendant's Motion to Review the Detention Order of Magistrate Judge Becky Thorson dated May 1, 2015 [Doc. No. 26]. The Court has conducted a de novo review of the proceedings before Magistrate Judge Thorson. The Court has also reviewed the parties' submissions on appeal and heard arguments of counsel.

## II.  Standard

A defendant may be detained pending trial if the Court finds there is no

1

"condition or combination of conditions . . . [that] will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Because the Defendant has been charged under 18 U.S.C. § 2339B, and because the Magistrate Judge found probable cause exists to support these charges, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community. 18 U.S.C. § 3142 (e)(3)(C) (18 U.S.C. § 2339B is a crime listed in 18 U.S.C. § 2332b(g)(5)).

The existence of this presumption places upon the Defendant the "limited burden of production - not a burden of persuasion - to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003) (quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)).

Detention is appropriate where the government proves by clear and convincing evidence that the Defendant is a danger to others or to the community, or when the government proves by a preponderance of the evidence that the Defendant is a risk of flight, and that in either case, there are no conditions or combination of conditions that will assure the safety of the

community or the Defendant's appearance at future court proceedings.

In making this determination, the Court must take into account the following factors:

(1) The nature and circumstances of the offense charged, including the fact that the crime charged is an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including–

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### A. Offense Charged and Weight of the Evidence

The Defendant has been charged in the Complaint with Conspiracy to Provide Material Support to a Designated Terrorist Organization in violation of

18 U.S.C. § 2339B(a)(1). The offense charged in this case is a serious felony that carries a statutory maximum sentence of 15 years.

As set forth in the sworn Complaint, and as confirmed by the testimony of Special Agent Samit, in May 2014, Abdullahi Yusuf was stopped at the MSP airport as he was attempting to fly to Istanbul, Turkey. The government asserts that Yusuf's ultimate destination was Syria, so he could join ISIL, a foreign terrorist organization. In response to Yusuf's failed attempt to travel to Turkey, it is believed that another individual, Y.J., co-defendant Guled Omar and a confidential human source ("CHS") later tried to drive to San Diego, so they could travel to Syria from Mexico. When this plan was frustrated, Y.J. took a bus to JFK airport and was able to reach Turkey from there.

Also in May 2014, Abdi Nur traveled to Istanbul, Turkey. A close relative of Nur, Witness 1, showed law enforcement communications Witness 1 had with Nur. These communications demonstrated that Nur traveled to "the brothers." Nur also told Witness 1 not to look for him, because it was too late. Law enforcement also viewed Nur's Facebook page, on which he posted several photographs of lions, a person holding a T-shirt with "Syria" on it, and another image that stated "The Caliphate is Coming."

After Nur's departure, Witness 1 went to the Dar al-Farooq mosque and confronted co-defendant Mohamed Farah, the Defendant's brother. M. Farah told Witness 1 that Nur's ticket had already been paid for and that it was likely that Nur had already left. Later, Witness 1 visited the Farah home and spoke to the Defendant, Adnan Farah, who stated that if he told Witness 1 what happened, they would not be safe. The Defendant also told Witness 1 that the travelers don't know when they are leaving, that the tickets just show up. The Defendant further stated that he did not know when Nur was leaving.

Law enforcement also viewed the Defendant's Facebook page and observed a posted photograph of a banner that was the image of Anwar Al-Awlaki - an American-born Islamic militant and member of al Qaeda who was killed in 2011. Other photographs posted on the Defendant's Facebook page depict a black flag commonly used by jihadists, and of a man holding a large caliber rifle.

The Defendant applied for a passport on April 25, 2014. On this application he listed a departure date of May 30, 2014 to travel to China. When questioned by FBI agents about his travel plans in June 2014, the Defendant maintained that he was planning to travel to China, but acknowledged he had no

money, did not have a job, and that he did not know how much it cost to travel to China. The Defendant's parents took away his passport after discovering it in the mail. The Defendant's mother told law enforcement that she was not aware that her son had applied for a passport.

On November 6, 2014, co-defendant Guled Omar was stopped at the MSP airport before boarding a flight to San Diego. He had a passport, but no checked luggage. Later, in a conversation with the CHS, Omar told the CHS that he immediately called co-defendant Hanad Musse to inform him that he had been stopped and not allowed to travel to San Diego.

Thereafter, Musse and co-defendant Zacharia Abdurahman and two others took a Greyhound bus from Minnesota to New York. Once in New York, Musse and Abdurahman booked airline tickets to Athens, Greece. Neither one was allowed to board the plane, however. During questioning by law enforcement, Musse said he was traveling alone to Greece to "chill," that he did not know anyone in Greece and that he had not made any reservations in Greece. Abdurahman also stated that he was traveling alone to Greece, but then later changed his story, stating that he was traveling with Musse. He also volunteered that if he was really going to Syria to join ISIS he would have traveled to Istanbul.

Upon returning to Minnesota, Musse, Abdurahman and the Defendant were part of a group that in February 2015 was attempting to travel to southern California to collect forged passports and then cross into Mexico, and from there, travel to Syria. The CHS learned from members of the conspiracy that others were in direct contact with Abdi Nur, whose social media postings showed that he had entered Syria and joined ISIL. The plan to obtain false passports was derailed when Nur was unable to arrange for the passports from his source. When the plan fell through, the CHS told Guled Omar that he may be able to secure a contact in California for forged travel documents. When such a contact was made, Omar notified others in the conspiracy of the existence of a new source for forged travel documents.

On March 30, 2015, the Defendant gave the CHS a passport photograph, and a few days later gave the CHS $100 as a down payment for the forged passport. On April 5, 2015, the Defendant provided Musse's passport photograph to the CHS. Ultimately, the Defendant put off his travel plans after speaking with an ISIL fighter who told him and co-defendant Abdurahman Daud how to travel from Turkey to Syria. After this conversation, the Defendant and Daud concluded the costs of travel had increased. In addition, the Defendant's

mother believed her sons were about to leave Minneapolis for Chicago, and that while she would allow M. Farah to go, she was not going to allow the Defendant to go to Chicago. The Defendant told Daud that he had an alternate plan to get to Syria.

The Defendant argues that the evidence against him is largely based only on his association with others who appear to support ISIL. He further argues that he has a First Amendment right to association, and that the criminal complaint violates this right. See Snyder v. Phelps, 562 U.S. 443 (2011) (finding that First Amendment shielded members of Westboro Baptist Church from tort liability for its picketing of military funeral, no matter that the speech was disrespectful). The Defendant asserts that his associations are not per se criminal. He did not go to the airport or to either coast to travel outside the United States. He did not confess to any wrongdoing. The Magistrate Judge relied on his associations with Abdi Nur in making the determination that the Defendant be detained, and the fact that he spoke with a close relative of Nur, Witness 1. The statements he allegedly made to Witness 1 are ambiguous and there is no evidence of direct communications between Nur and the Defendant. He further asserts that providing $100 for a fake passport, that he never received, is inchoate.

While the Defendant may enjoy rights under the First Amendment, those rights are not infringed when the things he says are used as evidence against him. <u>Wisconsin v. Mitchell</u>, 508 U.S. 476, 489 (1993) ("The First Amendment, moreover, does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."); <u>United States v. Abdel Rahman</u>, 189 F.3d 88, 118 (2d Cir. 1999) (finding that in terrorism prosecution, although a defendant may not be prosecuted for expressing hostility against the United States, his statements may nonetheless be used against him when relevant to prove a pertinent fact in a criminal prosecution). Here, the Defendant is being prosecuted for conspiracy to provide material support to a foreign terrorist organization. His associations and the statements he made may be used by the government to prove a pertinent fact, such as motive or intent.

Accordingly, the Court finds the weight of the evidence supports a finding of detention. Not only did the Defendant attempt to travel overseas to join a violent terrorist organization, he also participated in attempts to obtain forged travel documents by providing passport photographs and cash to the CHS.

### B. Harm to the Community/Risk of Flight

The Defendant submits that he has provided sufficient evidence to rebut the presumption that he should be detained pending trial. During cross-examination of Special Agent Samit, the Defendant established that in June 2014, the Defendant was living at home with his parents and six siblings. He further established that he had not traveled to New York or to San Diego in an attempt to get overseas. With respect to the statements he allegedly made to Witness 1, the Defendant demonstrated that law enforcement did not confirm the "danger" the Defendant and Witness 1 would be exposed to if he told Witness 1 about Abdi Nur.

The Defendant also presented evidence through cross-examination of Agent Samit that someone could have hacked his Facebook page and posted the photos of Al-Awlaki, the sniper and the flag. The Defendant also established there was no evidence of statements by the Defendant that he would be going to Syria and that he has not been the subject of a wiretap. Further, there is no evidence that the Defendant had personal communications with Abdi Nur.

The Court finds that the Defendant poses a risk of harm to the community. He is charged with attempting to join the most violent terrorist organization,

ISIL. If he were to succeed, there is harm to the immediate Minnesota community, as the record demonstrates when young men successfully travel and join a terrorist organization, they tend to reach back to Minnesota through social media to recruit other young men.

The Court also finds there would be harm to the wider community - that of civilians in the Middle East - if the Defendant succeeds in his ambition to travel to Syria and join ISIL.

Finally, there is evidence in the record which indicates the Defendant poses a flight risk. Part of the offense conduct in this case involves the Defendant's attempt to travel overseas to join a terrorist organization, and his attempt to obtain forged travel documents to achieve his goal.

### C.   History and Characteristics of the Defendant

The Defendant is 19 years old and was born in Minnesota. He is not married and has no children. The Defendant reports he is in excellent health and has no mental health or substance abuse issues. He has no prior criminal history. For two months prior to his arrest, he was not employed.

### III.   Conclusion

Based on the file, record and proceedings herein, the Court finds that the

Defendant has not presented sufficient evidence to rebut the presumption in favor of detention.  The Court further finds that there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the Defendant is released, and that a preponderance of the evidence demonstrates that the Defendant is a flight risk.

IT IS HEREBY ORDERED that the Defendant's Motion to Review the Detention Order of Magistrate Judge Thorson [Doc. No. 46] is **DENIED**.  The Defendant shall remain in the custody of the U.S. Marshal pending further Order of this Court.

Date:   May 15, 2015

        s/ Michael J. Davis
        Michael J. Davis
        Chief Judge
        United States District Court